325 So.2d 48 (1975)
Ronald M. RODGERS, a/k/a Arthur J. Pellerin, Appellant,
v.
STATE of Florida, Appellee.
No. 74-1344.
District Court of Appeal of Florida, Second District.
December 3, 1975.
James A. Gardner, Public Defender, Sarasota, and Harold H. Moore, Asst. Public Defender, and Dennis J. Plews, Legal Intern, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Mary Jo M. Gallay, Asst. Atty. Gen., Tampa, for appellee.
BOARDMAN, Acting Chief Judge.
The appellant, Ronald M. Rodgers, also known as Arthur J. Pellerin, was convicted *49 after trial by jury on all counts[1] of a nine-count amended information. The trial court imposed the following sentences:

COUNT NO.: CHARGE: SENTENCE:
 1 Robbery (victims: Davis and Louise and Pricilla
 Kicklighter). Life
 2 Use of firearm during commission of felony
 charged in Count 1. None
 3 Assault with intent to commit a felony, to wit:
 murder (victim: Michael Ojanovac). 15 years
 4 Use of firearm in commission of felony charged
 in Count 3. None
 5 Breaking and entering with intent to commit a
 felony, to wit: false imprisonment and
 kidnapping (victims: William and Lucille
 Martin). 5 years
 6 Use of firearm during commission of felony
 charged in Count 5. None
 7 False imprisonment and kidnapping (victim:
 Lucille Martin). 15 years
 8 False imprisonment and kidnapping (victim:
 William Martin). 15 years
 9 Use of firearm during commission of felonies
 charged in Counts 8 and 9. None

The sentences were to run consecutively. After trial, appellant filed a motion for new trial, motion for arrest of judgment and a motion for correction and reduction of sentences. It is from the order of the trial court denying said motions that this timely appeal is taken.
The facts are not in real dispute. Appellant and Raymond Ducci (not involved in this case) entered and robbed Cox's Jewelry Store in the City of Naples around 1:00 P.M. on July 25, 1974. Davis and Louise Kicklighter were operating the store at the time. Their daughter, Pricilla, was also present. It was Ducci who forced the Kicklighters to lie down behind one of the display cases. Mr. Kicklighter managed to activate a silent burglar alarm. As soon as the two men left the store with jewelry, etc., Officer Ojanovac of the Police Department of the City of Naples, pulled up in front of appellant's Cadillac. Ducci fired at least two shots in Officer Ojanovac's direction. The officer was only slightly injured by flying glass. Ducci and appellant wheeled out of the parking lot with Ojanovac and Kicklighter in pursuit. Officer Ojanovac lost them during the chase. Mr. Iverron, a state's witness, testified that he was employed by the telephone company as a telephone installer; while he was working outside he heard several shots fired and saw a green Cadillac automobile drive rapidly down the street and pull into the carport of an unoccupied house; he saw a gun in the hand of one of the two male occupants and he called the police. Lucille and William Martin lived directly across the street from the house where appellant and Ducci pulled *50 into the carport. The testimony showed that the owners of that house had asked the Martins to look out for it in their absence. Mr. Martin went out to see what the two men wanted and met them in the middle of the street and, after a brief exchange of words, appellant stuck a gun in his back and ordered him to take them into his home. It was then decided by the intruders that Mr. and Mrs. Martin would be taken as hostages and forced to drive appellant and Ducci to Ft. Lauderdale. Mr. Martin drove his car with his wife in the front passenger seat and appellant and Ducci in the backseat. Officer Woodill had heard Officer Ojanovac's call for assistance, spotted the Martins' Lincoln Continental and pulled it over. Appellant and Ducci surrendered without resistance. Two handguns were confiscated at the time the arrest was made and appellant and Ducci were taken into custody.
The appellant took the witness stand and testified in his own behalf. He admitted that he participated in the alleged offenses, but that he did so out of his fear of Ducci; that Ducci had threatened to kill him, his girl friend and her children. His defense to each charge was coercion.
Upon careful review of the record and briefs, we think it advisable to discuss the four points raised by appellant.
In point one, appellant contends that the trial judge erred in permitting the state to proceed to trial joining the above offenses in a single information. In support of this contention, appellant relies on a decision of this court in the case of Kilgore v. State, Fla.App.2d, 1972, 271 So.2d 148. The cited case is distinguishable on facts and, further, was reversed by this court on grounds not applicable here. In Kilgore, supra, the defendant, on the day of trial, became aware that he was to be tried on two separate informations charging separate and distinct felonies before the same jury. The state filed its motion to consolidate the two cases for trial over the defense counsel's timely objection. The motion was granted. In this case the record is clear that appellant, several weeks prior to trial, was cognizant that he would be tried before the same jury for all of said offenses that had been initially charged in four separate informations. It was only at a hearing held on the day prior to the scheduled trial date that attorney for appellant moved for separate trials. The said motion was granted. Later that same afternoon, however, the state filed its motion to amend informations requesting therein that all offenses be tried jointly. This motion was granted and the case proceeded to trial. We hold that no reversible error is shown to appear. We point out that notwithstanding the said offenses were committed against different victims, they occurred within a half hour period and were a part of the same continuing criminal escapade. Ashley v. State, Fla. 1972, 265 So.2d 685.
In point two, the appellant contends that the trial court erred in not granting his motion to disqualify the trial judge, a county judge. In support of this position, which we submit is not well taken, appellant relies on Section 26.57, Florida Statutes. The statute does provide, among other things, that a county judge may try felony cases where there is no resident circuit judge.
Appellant contends that by implication a county judge cannot try felony cases when there is a resident circuit judge. However, Article V, § 2, Florida Constitution, provides that the Chief Justice of the Supreme court may assign judges to any court for which the judge is qualified, and that the Chief Justice may delegate to the Chief Judge of the Circuit Court the power to assign judges in his circuit. See also Rule 1.020(b)(3)(ii), RCP. In State ex rel. Treadwell v. Hall, Fla. 1973, 274 So.2d 537, the Supreme Court held that qualified county judges may "be assigned as temporary circuit judges for the performance of any judicial service a circuit judge can perform." (Emphasis added)
*51 We mention that the appellant does not attack the qualifications of the trial judge, the Honorable Thomas T. Trettis, Jr., county judge. The record shows that the chief judge of the circuit signed an order under authority granted to him in Article V, § 2, supra, appointing the trial judge to preside over appellant's trial. If we were to adopt appellant's reasoning, under no circumstances could a county judge be temporarily appointed to hear and determine circuit court matters when a circuit judge resides in the county. Such a conclusion is entirely inconsistent with the spirit and intent of the provisions of Article V, § 2, Florida Constitution, one purpose of which is to streamline and expedite the orderly administration of justice.
As to point three, appellant attacks the verdicts reached by the jury on Count 5 and Count 6. Appellant was charged in Count 5 with breaking and entering with intent to commit a felony, to wit: false imprisonment and kidnapping. Over appellant's objection, the jury was instructed that he could be convicted of the lesser included offense of breaking and entering with intent to commit a misdemeanor. As previously stated above, the jury verdict returned on Count 5 was as follows:
We, the Jury, find the Defendant guilty as charged on Count 5, Breaking and Entering with the intent to commit a misdemeanor... .
It is therefore apparent that the jury found the appellant had the intent to commit an unspecified misdemeanor, which was not stated in the accusatory writ. We cannot determine whether this misdemeanor was included within the offense of false imprisonment or kidnapping, particularly in view of the fact that the court never defined the elements of any misdemeanor which appellant might have been intending to commit. Accordingly, the judgment must be set aside and the companion judgment on Count 6 must also fall.
Lastly, appellant contends that only one sentence is legal under the same transaction doctrine. We have considered this question in several prior cases and have consistently held that where different victims are involved in crimes, an accused, upon conviction, may be sentenced for each separate offense regardless of whether such criminal conduct may be said to have occurred within a single criminal episode. See, e.g. Ellis v. State, Fla.App.2d, 1974, 298 So.2d 527.
The judgments on Counts 5 and 6 are vacated; in all other respects, the case is affirmed.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] Convicted of B & E with intent to commit a misdemeanor (Count 5).