332 So.2d 4 (1976)
John W. CORN, Appellant,
v.
STATE of Florida, Appellee.
No. 46922.
Supreme Court of Florida.
March 19, 1976.
Rehearing Denied June 4, 1976.
*5 Herman W. Goldner of Goldner, Marger & Davis, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., and Richard G. Pippinger, Asst. Atty. Gen., for appellee.
ROBERTS, Justice.
This cause is before us to review the decision of the County Court in and for Pinellas County which upholds the constitutionality of Section 821.01, Florida Statutes. We have jurisdiction pursuant to Article V, Section 3(b)(1), Constitution of Florida.
Appellant was informed against for violation of Section 821.01, Florida Statutes, providing:
"Trespass after warning.  Whoever willfully:
(1) Enters into the enclosed land and premises of another or into any private residence, house, or building of another, having been forbidden so to enter by the lawful occupant;
(2) Not having previously been forbidden, is warned to depart therefrom and refuses to do so;
(3) Having departed, reenters without the previous consent of the lawful occupant; or
(4) Having departed, remains about in the vicinity, using profane or indecent language shall upon conviction be punished as provided in § 821.38."
in that on September 13, 1974, he willfully entered onto the premises of The Gateway *6 Mall, after having previously been forbidden to enter and after having been warned to depart. He pled nolo contendere and the trial court adjudicated him guilty of violating Section 821.01(3), Florida Statutes, and fined him $100.00 plus $27.00 court costs. In his order, the trial court determined that Section 821.01, Florida Statutes, is constitutional, that the State of Florida has established a prima facie case, and ordered that since the defendant has challenged the constitutionality of Section 821.01, Florida Statutes, the question of constitutionality is preserved for defendant's appeal.
The record before us clearly supports the trial judge's conclusion that the State has made a prima facie case for violation of Section 821.01, Florida Statutes, by the defendant. His activity is clearly within the purview of that conduct sought to be prohibited by the statute. He carried on in the Mall in a boisterous manner and after having been asked to leave and having been instructed that if he returned he would be prosecuted for trespassing, he did shortly thereafter return and told the officers to go ahead and arrest him because he was trespassing. His attack on the constitutionality of the statute is limited to an argument of unconstitutionality on the sole basis of violation of his right to equal protection under the law. However, in the same argument, he concedes that he was not discriminated against by being asked to leave the Mall or by subsequently being arrested for trespass, because of race, color, religion or national origin or on the basis of any arbitrary classification. In fact, he does not show how his right to equal protection is violated by the statute. The act in question does not apply arbitrarily and discriminatorily to appellant. Lasky v. State Farm Insurance Company, 296 So.2d 9 (Fla. 1974); Erwin v. State, 262 So.2d 677 (Fla. 1972); Jackson v. Consolidated Government of City of Jacksonville, 225 So.2d 497 (Fla. 1969); McKee v. State, 203 So.2d 321 (Fla. 1967); Finlayson v. Conner, 167 So.2d 569 (Fla. 1964); Insurance Co. of Texas v. Rainey, 86 So.2d 447 (Fla. 1956); and DiLustro v. Penton, 106 Fla. 198, 142 So. 898 (1932). He contends that the questioned statute appropriately applies to family residences and other buildings where the public is not invited but should not apply to public or quasi-public places because to the extent that a property owner, for his own financial advantage, opens his premises to the public, the more his ownership rights become limited, and urges that a strict construction of the statute and application of ejusdem generis require that the Mall not be included within the meaning of the statutory language.
Review of his brief reveals no convincing argument on his behalf that his freedom of speech rights were violated. In Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), the Supreme Court of the United States upheld the constitutionality of another portion of our trespass statute, Section 821.18, Florida Statutes (1968), and expressly stated:
"The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this `area chosen for the peaceful civil rights demonstration was not only "reasonable" but also particularly appropriate . .. .' Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, Cox v. Louisiana, supra, [379 U.S. 536] at 554-555 [85 S.Ct. 453, at 464 and 480, 13 L.Ed.2d 471] and [379 U.S.] 563-564 [85 S.Ct. 476, 13 L.Ed.2d *7 487]. We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose."
All natural persons have the inalienable right to acquire, possess, and protect their property. Article I, Section 2, Constitution of Florida. It has long been recognized that the rights in property are basic civil rights. Lynch et al. v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). The original of private property is founded in nature. 1 Blackstone 138. In Wilkinson v. Leland et al., 27 U.S. 627 at 657, 7 L.Ed. 542 (1828), the Supreme Court of the United States emphasized the importance of the right to private property as basic to the foundation of our democratic system of government in the following language:
"The fundamental maxims of a free government seem to require, that the rights of personal liberty and private property should be held sacred."
Cf. State v. City of Stuart, 97 Fla. 69, 120 So. 335 at 346-347 (1929). The right of property has been characterized as a sacred right, the protection of which is an important object of government. 16 Am.Jur.2d, Constitutional Law Section. Relative to the significance of this right, the Supreme Court of Texas in Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513 at 515 (1921), explicated:
"To secure their property was one of the great ends for which men entered into society. The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty  an expression of his freedom, guaranteed as inviolate by every American Bill of Rights.
"It is not a right, therefore, over which the police power is paramount. Like every other fundamental liberty, it is a right to which the police power is subordinate.
"It is a right which takes into account the equal rights of others, for it is qualified by the obligation that the use of the property shall not be to the prejudice of others. But if subject alone to that qualification the citizen is not free to use his lands and his goods as he chooses, it is difficult to perceive wherein his right of property has any existence.

"The ancient and established maxims of Anglo-Saxon law which protects these fundamental rights in the use, enjoyment and disposal of private property, are but the outgrowth of the long and arduous experience of mankind. They embody a painful, tragic history  the record of the struggle against tyranny, the overseership of prefects and the overlordship of kings and nobles, when nothing so well bespoke the serfdom of the subject as his incapability to own property. They proclaim the freedom of men from those odious despotisms, their liberty to earn and possess their own, to deal with it, to use it and dispose of it, not at the behest of a master, but in the manner that befits free men.
"Laws are seldom wiser than the experience of mankind. These great maxims, which are but the reflection of that experience, may be better trusted to safeguard the interests of mankind than experimental doctrines whose inevitable end will be the subversion of all private right." (emphasis supplied)
Cf. Miller v. McKenna, 23 Cal.2d 774, 147 P.2d 531 (1944).[1]
*8 John Adams said in "A Defence of the Constitutions," Coker, Democracy, Liberty and Property, at 125-6, that property is surely a right of mankind as truly as liberty. As a new country, we could have selected any form of government  socialism, communism, fascism or any other ism, but our leadership, with divine guidance, selected for this fledgling nation a system of free enterprise with a profit incentive, believing as they did and as we do now that a nation is stronger when its citizens are guaranteed the right to earn decent wages, acquire, possess and protect property, risk capital, and venture for additional profits.
Here we have a situation of property privately owned but utilized for monetary gain and hence opened to the public, property "quasi-public" in the nature of its use. In a sense an invitation is extended to the public to shop in the Mall to the financial advantage of the owners of the stores contained therein and consequently to the advantage of the Mall owner. The lobby of a commercial mall is a privately owned building to which the public has been invited to come, to look and to buy. The invitation presupposes that the conduct of persons coming there will be in keeping with such purposes. However, reasonable nondiscriminatory restrictions pertaining to the use of the Mall may be placed on the users of such Mall, such as the requirement that shoes be worn. As any invitation, it can be limited and, upon abuse, be withdrawn or revoked. This can be analogized to the lobby of a hotel where people come to rent rooms, buy food, and trade with shops located in the hotel. There would be nothing unreasonable about providing that swimming attire would not be permitted in the lobby; or, in a fine restaurant, the owner would have a right to require shirts, ties and jackets, so long as the regulation applied uniformly to all persons. Reasonably incident to the control and ownership of the Mall, a screaming, yelling, boisterous person could be asked to leave the premises. The trespass statute in question could certainly cover such a situation as this where one is causing such a disturbance in the Mall lobby as to warrant his being asked to leave and asked not to re-enter until the following day. It would certainly be to the financial detriment of all the store owners in the Mall to have someone causing a disturbance in the Mall lobby to the extent that it might keep would be customers from going into the Mall lobby if those causing disturbances therein could not be asked to leave. Once again, we must emphasize that no argument has been made by appellant that his freedom of speech right has been violated. Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), which involved the peaceful picketing of a business enterprise located within a shopping center is not applicable sub judice.
The statute in question was passed by the Legislature to assist the property owner in the protection of his property. Under the facts of the instant cause, the statute did not apply arbitrarily or discriminatorily to appellant. While we have many regulatory measures protecting civil rights of citizens, we also have constitutional duty to protect rights of property and the business community.
This court is committed to the fundamental principle that it has the duty if reasonably possible, and consistent with constitutional rights, to resolve doubts as to the validity of a statute in favor of its constitutional validity and to construe a statute, if reasonably possible, in such a manner as to support its constitutionality  to adopt a reasonable interpretation of a statute which removes it farthest from constitutional infirmity.[2] By placing the *9 foregoing construction on Section 821.01, Florida Statutes, we see no constitutional infirmity under the present attack made by appellant on the statute.
Accordingly, we find that appellant's activities did fall within the language of Section 821.01, Florida Statutes, that said statute has not been unconstitutionally applied to appellant, and that he has not been deprived of his right to equal protection under the law.
It appears, however, that the judgment of the lower court failed to expressly adjudicate that appellant was guilty of the crime charged.[3] The sentence (fine) not being anchored to a correct judgment of conviction must be vacated. The cause is, therefore, remanded for the purpose of entering a proper judgment; and upon such judgment being entered, the judgment will stand affirmed.[4]
It is so ordered.
OVERTON, C.J., and ADKINS and SUNDBERG, JJ.; and SHOLTS, Circuit Court Judge, concur.
ENGLAND, J., concurs with an opinion.
HATCHETT, J., dissents with an opinion.
ENGLAND, Justice (concurring).
I concur in the result reached by a majority of the Court on the issues framed in this appeal. Had Corn appropriately and timely raised a denial of his constitutionally-protected right of free speech, I do not believe that the application of this statute to the facts in this case would sustain his conviction. See Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 324, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). c.f. Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 560, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972).
HATCHETT, Justice (dissenting).
Because I believe the information which initiated this prosecution does not charge the offense of which appellant has been found guilty, or, indeed, any offense under Florida law, I dissent from the affirmance of the conviction.[1] I agree with the majority *10 and my brother England, however, that there is no need to reach any first amendment question in the present posture of the case.[2] The information alleges that John W. Corn at a specified time "enter[ed] onto the premises of Gateway Mall, after having been previously forbidden to enter and after having been warned to depart."[3] Evidently the draftsman intended to accuse Corn of a violation of subsection one of Fla. Stat. § 821.01 (1973). Arguably, he succeeded in charging, in a single count, violations of subsections one and two of Fla. Stat. § 821.01 (1973); but the trial court found Corn guilty of subsection three, which proscribes reentering, apparently on the theory that the facts admitted fall most nearly under Fla. Stat. § 821.01(3) (1973).
In accepting the plea of nolo contendere, the trial court had the benefit of depositions given by some of the persons involved in the incident out of which this case arises. The defendant himself was not questioned at any length because of "a serious heart condition." (R 66) According to the depositions, the person who decided he would "rather just bar him [Corn] from the Mall, you know" (R 14) was an 18 year old high school junior in the employ of a private guard service. His name was Frank Johnson and he "wasn't in a security guard uniform that day ... [I]t was a Hawaiian weekend and [Johnson] had the Hawaiian shirt on with the badge on." (R 23) He had on blue trousers and wore a straw hat.
Corn was a customer of one of the shops in the Gateway Mall, the Radio Shack, where he and a salesperson got into an argument in connection with the refund of the purchase price for a radio antenna. *11 An employee of the Radio Shack summoned Johnson. After a certain amount of discussion the party adjourned to the mall commons. There, in the presence of two policemen, Officers Drolet and Loersch, Mr. Johnson told Mr. Corn to leave the mall. Officer Drolet testified:
As a matter of fact he [Johnson] told Mr. Corn, he said, "I'm the security guard here and I understand there was problems in the Radio Shack and I want to advise you that as far as the company goes or as far as the mall goes we restrict you right now from the mall area altogether, that's any portion of it". So Mr. Corn turned to him and said, "Who are you?" and he said, "My name is Johnson", and at that point because of my experience I had Mr. Johnson show identification because he was not in what I would term a proper uniform. I had him show identification as Frank Johnson to Mr. Corn, and I then turned to Mr. Corn and said, "Now, I recognize this man as a security guard here". I had seen him. I lived in the area. I had seen him in the area several times. So I did tell him the man was a security guard in that place. Mr. Corn then turned to him and told them he had no business telling him not to go in any particular area or place, that he had no authority to do so, and I at that time again cautioned Mr. Corn, he being a security guard, Johnson being a security guard did have that authorization.
After this, Mr. Corn left the premises but some ten minutes later returned, once again questioning Mr. Johnson's authority to bar him from the mall. The record does not show who owned Gateway Mall. It may be that the owner contracted with a manager who contracted with Johnson's employer for Johnson's services. It may be that the mall owner, the mall manager and Johnson's employer are each corporations.
There is no occasion to reach the question of Johnson's authority, however, where the information fails even to allege that he has authority. Under the statute which section 821.01[4] replaced, warning or notice was to be given by "the owner or employee". Under the statute at issue here, this element has been modified and authority to forbid entry is given to "the lawful occupant" of the premises. The information in the present case alleges that appellant was forbidden to enter and warned to depart but fails to specify by whom he was forbidden and warned. Cf. State v. Huegel, 141 Fla. Supp. 133 (19th Cir.1974) (Alderman, J.) An essential element of the offense is omitted. Such an *12 omission is fatal, especially where the premises are those "of the Gateway Mall", and not the home of a named person. Otherwise, the statute would be amenable to absurd interpretations, and manifestly unjust applications.
If the information in this case charges a crime, a citizen could have been convicted under it, at any time before July 1, 1975, for entering the premises of a shopping mall, after he had been told not to, regardless of who told him not to. Anybody at all  a man with a spendthrift wife, a shopkeeper in competition with a store at the mall  might forbid entry onto the mall's premises, and bring to bear the whole power of the State to work his will. Section 821.01 does not contemplate any such plenary grant of police power to private persons, but limits to "the lawful occupant" the power to forbid entry or reentry, or to require departure.
Where an information purporting to charge an offense under section 821.01 fails to allege either (1) that entry or reentry was forbidden by the lawful occupant, or (2) that the lawful occupant warned the accused to depart, no crime is charged, in my opinion, because an essential element of the offense has been omitted. As we recently said, a "plea of nolo contendere admits, for the purpose of the case, all the facts which are well-pleaded and only those." Allen v. State, 326 So.2d 419 (Fla. 1975). A conviction predicated on a plea to an information which fails to charge a crime is a nullity. Allen v. State, supra; Kelly v. State, 323 So.2d 565 (Fla. 1975); Baker v. State, 323 So.2d 556 (Fla. 1975); Zimmerman v. State, 320 So.2d 41 (Fla.App.2d Dist. 1975). Where an accusatory pleading "wholly fails to allege any offense against the defendant, or to allege the essential elements of the statutory offense sought to be charged, it cannot support a conviction." 17 Fla.Jur. Indictments and Informations § 104 (1958) (footnotes omitted). When an information or indictment charges a crime, "[n]o essential element ... should be left to inference." Id. § 29. Evanco v. State, 318 So.2d 535 (Fla.App.1st Dist. 1975); Haley v. State, 315 So.2d 525 (Fla.App.2d Dist. 1975). See Long v. State, 92 So.2d 259 (Fla. 1957); Smith v. State, 324 So.2d 699 (Fla.App.1st Dist. 1976); Rodgers v. State, 325 So.2d 48 (Fla.App.2d Dist. 1975); Causey v. State, 307 So.2d 197 (Fla.App.2d Dist. 1975); Priester v. State, 294 So.2d 421 (Fla.App.4th Dist. 1974); Ashley v. State, 292 So.2d 616 (Fla.App.2d Dist. 1974).
The majority states, "It appears, however, that the judgment of the lower court failed to expressly adjudicate that appellant was guilty of the crime charged." I agree. If the appellant was charged with any offense, the charge was either brought under Fla. Stat. § 821.01(1) or Fla. Stat. § 821.01(2). The judgment, if it adjudicates the appellant guilty of any offense, adjudges him guilty of § 821.01(3). This case is remanded for the purpose of entering a proper judgment, and upon such a judgment being entered, the judgment will stand affirmed, according to the majority. Will the parties have an opportunity to be heard before the judgment is "corrected", or shall the new adjudication on offenses never properly charged be considered merely the correction of a typographical error?
The present case has very little indeed to do with communism, socialism or even fascism, and a great deal to do with due process of law. We are called upon to decide a legal question, not an ideological or political one. The narrow issue for our consideration is whether a conviction, under a law since repealed, should be permitted to stand, even though it is predicated on an accusation which never charged a crime. The problem this case presents deserves careful technical analysis and resolution. I believe it is precisely because the majority has approached this matter as a broad philosophical question that it has gone astray, and I respectfully dissent.
NOTES
[1] "The right of `acquiring, possessing, and protecting property' is anchored in the first section of the first article of our Constitution. This right is as old as Magna Charta. It lies at the foundation of our constitutional government, and `is necessary to the existence of civil liberty and free institutions.' Billings v. Hall, 7 Cal. 1, 6."
[2] Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, 135 So. 795 (1931), appeal dism. 286 U.S. 523, 52 S.Ct. 494, 76 L.Ed. 1267; Haworth v. Chapman, 113 Fla. 591, 152 So. 663 (1933); Hanson v. State, 56 So.2d 129 (Fla. 1952); Overstreet v. Blum, 227 So.2d 197 (Fla. 1969); Hancock v. Sapp, 225 So.2d 411 (Fla. 1969); Rich v. Ryals, 212 So.2d 641 (Fla. 1968).
[3] Burns v. State, 97 Fla. 232, 120 So. 360 (1929); Kuhn v. State, 98 Fla. 206, 123 So. 755 (1929); Ellis v. State, 100 Fla. 27, 129 So. 106 (1930); Anderson v. Chapman, 109 Fla. 54, 146 So. 675 (1933); State ex rel. House v. Mayo, 122 Fla. 23, 164 So. 673 (1935); Finch v. Mayo, 137 Fla. 762, 189 So. 27 (1939); and Hart v. State, 60 So.2d 489 (Fla. 1952). Rule 3.650, Florida Criminal Rules of Procedure.
[4] Hart v. State, 60 So.2d 489 (Fla. 1952).
[1] The majority concludes that the judgment of conviction is defective for want of an "express adjudication" of guilt. The pertinent language in the judgment is:

The Court therefore finds the defendant, JOHN W. CORN, Guilty of violating F.S. 821.01(3) and fines the defendant... .
The trial court will evidently be able to meet the majority's objection by substituting the word "adjudicates" for the word "finds". The requirement for such precision of language is apparently a new one, going beyond what was required in the cases the majority cites. The opinions in Hart v. State, 60 So.2d 489 (Fla. 1952); Kuhn v. State, 98 Fla. 206, 123 So. 755 (1929) and Burns v. State, 97 Fla. 232, 120 So. 360 (1929) omit to specify what language the Court deemed unsatisfactory in those cases. The other decisions cited are clearly distinguishable. In Finch v. Mayo, 137 Fla. 762, 189 So. 27 (1939), the deficient language was, as follows:
It is the judgment of the court and the sentence of the law that you Frank Finch be taken by the Sheriff, or his lawful deputy, to the State's prison of the State of Florida and delivered to the principal keeper thereof, and there to be confined in said State's prison at hard labor for a period of (15) fifteen years from date of your incarceration therein.
Similarly, in State ex rel. House v. Mayo, 122 Fla. 23, 164 So. 673, 674 (1935) the Court found the following language inadequate:
It is the judgment of the court and the sentence of the law that you, Albert House, be taken by the Sheriff, or his lawful deputy, to the State Prison of the State of Florida and be delivered to the principal keeper thereof, there to be confined in said State Prison at hard labor for a period, ...
A closer question was presented in Anderson v. Chapman, 109 Fla. 54, 146 So. 675 (1933) where it was clear from context that the crime involved was robbery and where the clear implication was that the defendant had earlier been pronounced guilty. The Court concluded, however, that such an important matter should not be left to inference. The pertinent language was, 146 So. at 677:
It is therefore considered by the Court that you, J.C. Anderson, for the crime of which you have been and stand convicted, do be imprisoned by confinement at hard labor in the State Prison for a period of ten (10) years.
Finally, the majority cites Ellis v. State, 100 Fla. 27, 129 So. 106 (1930) where, as in Finch v. Mayo, supra, and State ex rel. House v. Mayo, supra, the trial court completely omitted to adjudge the defendant guilty and pronounced sentence in these words, 129 So. at 108:
It is the judgment of the court and the sentence of the law, that you J.H. Ellis, pay a fine of $300, and in default of payment of said fine you will be confined in the County jail for a period of (3) months.
Writing for the Court in Ellis, Justice Brown said that "the so-called judgment ... was defective, in that it contained no adjudication by the court of the guilt of the defendant", 129 So. at 108, and emphasized the importance of judicial action even where a jury had returned a guilty verdict. The Court in Ellis v. State, supra, did not go so far as the Court does today, however, as is evident from Justice Brown's remark that, "Of course, the judgment of the court on the question of the guilt of the defendant need not be expressed in any particular set form of words ... but surely it should not be entirely omitted." 129 So. at 110.
[2] See generally Petersen v. Talisman Sugar Corp., 478 F.2d 73 (5th Cir.1973). In my opinion, the Court in Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) has effectively overruled its prior decision in Amalgamated Food Employees Union v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), although without saying so.
[3] The body of the information reads:

JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, or his Assistant State Attorney, under oath, information makes that JOHN W. CORN of the County of Pinellas and State of Florida, on the 13 day of September in the year of our Lord, one thousand nine hundred seventy-four, in the County and State aforesaid, did then and there willfully enter onto the premises of Gateway Mall, after having been previously forbidden to enter and after having been warned to depart; contrary to Chapter 821.01(1), Florida Statutes, and against the peace and dignity of the State of Florida.
[4] Although the fact has not lessened judicial labor in the present case, section 821.01 was repealed by the legislature in the 1974 session, effective July 1, 1975. Fla.Laws, ch. 74-383 § 66. Pursuant to Fla. Stat. § 775.011(2) (1974 Supp.), prosecutions for "offenses committed prior to July 1, 1975, ... shall be governed by the prior law," so there is still the duty to decide whether appellant's conviction under section 821.01 should stand. The predecessor statute to section 821.01 was enacted in 1879 as Fla. Laws, ch. 3139 § 1, which was styled "An Act for the Protection of Private Residences and Enclosed Premises" and provided, as follows:

That any person who shall wilfully trespass upon or enter into any private residence, house or building, or labor camp, occupied by the owner or the employees of the owner, or the enclosed premises of another, and shall be warned or notified by such owner or employee to depart therefrom, and shall refuse to depart, or having departed shall re-enter or remain about in the vicinity of the same, using profane or indecent language in a loud or boisterous manner, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in the county jail not exceeding sixty days, or by fine not exceeding fifty dollars, one or both, at the discretion of the court trying the case.
The statute was amended in 1969 at which time it took the form it had when Corn was accused of violating it. Fla.Laws, ch. 69-284 § 1. Both originally and as amended, section 821.01 was enacted without division into subsections, which were supplied by the codifiers.