GRIMES, Justice,
concurring in part, dissenting in part.
The United States Constitution does not explicitly refer to the right of privacy. However, in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the United States Supreme Court construed the due process clause of the fourteenth amendment to provide a right of privacy with respect to a woman’s decision to have an abortion. In several subsequent decisions, the United States Supreme Court has delineated the extent to which the state may qualify or otherwise burden a woman’s right to have an abortion.
In 1980, the Florida Constitution was amended to specifically guarantee persons the right to privacy. As a consequence, it was thereafter unnecessary to read a right of privacy into the due process provision of Florida’s equivalent to the fourteenth amendment. However, this did not mean that Florida voters had elected to create more privacy rights concerning abortion than those already guaranteed by the United States Supreme Court. By 1980, abortion rights were well established under the federal Constitution, and I believe the privacy amendment had the practical effect of guaranteeing these same rights under the Florida Constitution. If the United States Supreme Court were to subsequently recede from Roe v. Wade, this would not diminish the abortion rights now provided by the privacy amendment of the Florida Constitution. Consequently, I agree with the analysis contained in parts I and II of the majority opinion, which I read as adopting, for purposes of the Florida Constitution, the qualified right to have an abortion established in Roe v. Wade.
In part III, however, the majority opinion interprets the Florida Constitution differently than the United States Supreme Court has interpreted the federal Constitution with respect to a minor’s right to an abortion. Recognizing that the constitutional rights of children may not be equated with those of adults, the United States Supreme Court in Bellotti v. Baird, 443 *1203 U.S. 622, 633-34, 99 S.Ct. 3035, 3042-43, 61 L.Ed.2d 797 (1979), said:
The Court long has recognized that the status of minors under the law is unique in many respects. As Mr. Justice Frankfurter aptly put it: “[C]hildren have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State’s duty towards children.” May v. Anderson, 345 U.S. 528, 536, 73 S.Ct. 840, 844, 97 L.Ed. 1221 (1953) (concurring opinion). The unique role in our society of the family, the institution by which “we inculcate and pass down many of our most cherished values, moral and cultural,” Moore v. East Cleveland, 431 U.S. 494, 503-504, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977) (plurality opinion), requires that constitutional principles be applied with sensitivity and flexibility to the special needs of parents and children. We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.
Referring to the need for parental guidance upon the decisions of minors, the Court went on to say:
Properly understood, then, the tradition of parental authority is not inconsistent with our tradition of individual liberty; rather, the former is one of the basic presuppositions of the latter. Legal restrictions on minors, especially those supportive of the parental role, may be important to the child’s chances for the full growth and maturity that make eventual participation in a free society meaningful and rewarding. Under the Constitution, the State can “properly conclude that parents and others, teachers for example, who have [the] primary responsibility for children’s well-being are entitled to the support of laws designed to aid discharge of that responsibility.” Ginsberg v. New York, 390 U.S. [629], at 639, 88 S.Ct. [1274], at 1280 [20 L.Ed.2d 195 (1968) ].
Id. 443 U.S. at 638-39, 99 S.Ct. at 3045-46 (footnotes omitted). In H.L. v. Matheson, 450 U.S. 398, 411, 101 S.Ct. 1164, 1172, 67 L.Ed.2d 388 (1981), the Court acknowledged the impact of abortion on a minor when it said that:
The medical, emotional, and psychological consequences of an abortion are serious and can be lasting; this is particularly so when the patient is immature.
Thus, the United States Supreme Court has consistently recognized that a state statute requiring parental consent to a minor’s abortion is constitutional if it provides a judicial alternative in which the consent is obviated if the court finds that the minor is mature enough to make the abortion decision or, in the absence of the requisite maturity, the abortion is in the minor’s best interest. Planned Parenthood Ass’n v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983); Bellotti.
While purporting to acknowledge the state’s interest in protecting minors and in preserving family unity, the majority reaches the conclusion that these interests as reflected in the instant statute must fall in the face of its broad interpretation of the privacy amendment. In effect, the Court has said that the state’s interest in regulating abortions is no different with respect to minors than it is with adults. Under this ruling, even immature minors may decide to have an abortion without parental consent. I do not agree with either the majority’s broad interpretation of the privacy amendment or its limited view of the state’s interest concerning the conduct of minors.
Moreover, I cannot accept the majority’s conclusion that section 743.065, Florida Statutes (1987), which permits an unwed pregnant minor to consent to the performance of medical or surgical care except with respect to abortions, somehow makes the statute under consideration in the instant case unconstitutional.. Section 743.-065 was designed to permit doctors to avoid liability for providing medical servic *1204 es to minors without parental consent and to ensure that emergency treatment would be available. The decision to have an abortion is clearly different than the decision to undergo other medical or surgical care with respect to pregnancy, and the legislature has a right to determine that different criteria should be followed with respect to consenting to an abortion.
I must also disagree that the statute is unconstitutional because it does not provide for the appointment of an attorney for an indigent minor. While the Missouri statute approved in Planned Parenthood v. Ashcroft did provide for appointed counsel, the opinion in that case gave no indication that this was constitutionally required. In Lassiter v. Department of Social Services, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981), the United States Supreme Court said:
The pre-eminent generalization that emerges from this Court’s precedents on an indigent’s right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.
The Court went on to hold that there may be circumstances on a case-by-case basis in which counsel should be appointed for indigent parents in state termination proceedings. However, even in those cases where indigent persons stood to lose all of their parental rights, the Court rejected the notion that due process always required the appointment of counsel. In any event, that Court has never intimated that a minor has a constitutional right to counsel with respect to court proceedings concerning the right to have an abortion without parental consent. The statute involved in this case together with the accompanying rules of procedure are drawn in such a way as to simplify the judicial proceeding so that the minor will not be prejudiced by not having a lawyer.
Finally, the fact that a statute does not require a record hearing to memorialize the judge’s findings has never been deemed the basis to hold a statute unconstitutional. The Missouri statute upheld in Ashcroft contained no provision for a record. In any event, if a record were constitutionally necessary, this could be easily remedied by amending our rules of procedure.
It is this Court’s duty to uphold the constitutionality of statutes whenever this can be done consistent with sound legal principles. Corn v. State, 332 So.2d 4 (Fla.1976). Clearly, this statute is valid under our federal Constitution as interpreted by the United States Supreme Court. Admittedly, this Court has the authority to give the Florida Constitution a broader interpretation, but there should be a compelling reason for taking such a step.
Practically any law interferes in some manner with someone’s right of privacy. The difficulty lies in deciding the proper balance between this right and the legitimate interest of the state. As the representative of the people, the legislature is charged with the responsibility of deciding where to draw the line. Only when that decision clearly transgresses private rights should the courts interfere.
Here, the legislature has concluded that it is ordinarily desirable that a minor should have the advice and consent of her parents before having an abortion. However, by providing a judicial alternative which is simple, speedy, and confidential, the legislature has also ensured that an abortion will be denied to a minor only when she is too immature to make the decision and when it is against her best interest. Section 390.001(4)(a)(l), Florida Statutes (Supp.1988), reflects a legitimate state concern over the welfare of children and impinges upon the minor’s right to privacy in the least intrusive manner. I would uphold the constitutionality of the statute.