624 So.2d 739 (1993)
STATE of Florida, Appellant,
v.
Joyce WOODS, Appellee.
No. 92-1468.
District Court of Appeal of Florida, Fifth District.
August 27, 1993.
Rehearing Denied September 24, 1993.
Robert A. Butterworth, Atty. Gen., Tallahassee, David G. Mersch and Wesley Heidt, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and Anne Moorman Reeves, Asst. Public Defender, Daytona Beach, and Steven G. Mason, Law Office of Steven G. Mason, Orlando, for appellee.
HARRIS, Chief Judge.
Sergeant William Latham, an Orlando police officer employed off-duty as a security guard for Colonial Mall, knows Joyce Woods to be an habitual thief  "one of the big ones involved in shoplifting." He has known her for twelve years and is well aware of her background. In his capacity as a security officer for the mall, he has given her both a written notice (April 26, 1988) and an oral notice (August 12, 1989) not to return to the mall. Although the Orlando Police Department-approved written notice may have contained a six-month limitation period,[1] there is *740 no question that the oral notification contained no such limitation. It was an openended notice not to return to the mall.
On December 28, 1990, Latham observed Woods walking out of one of the stores in the mall. When he attempted to approach her, she entered a vehicle and exited the mall parking lot at a high rate of speed. Two days later, he again observed her at the mall; again she raced from the mall parking lot before he could encounter her. Shortly thereafter, however, he found her car parked on the other side of the mall and awaited her return. When she returned to the vehicle, he detained her for trespass. She attempted to flee but he grabbed her and advised her that she was "under arrest." Eleven watches stolen from Dillards' and valued at $1,119 were found in her purse. She was then arrested for grand theft.
The trial court granted a motion to suppress the introduction of the stolen watches into evidence, apparently because it found Woods had been illegally detained.
Woods argues that although she was told not to return to the mall, because it is the policy of the Orlando Police Department to recognize the authority of the written notice for only six months, she could only be excluded from the mall for six months. The trial court agreed. We disagree because we know of no authority which permits the policy of a police department to amend a state statute. The statute contains no such limitation. Nor is there any public policy why it should.[2]
Certainly shopping malls are quasi-public places which must be open to the public on a nondiscriminatory basis. But the owner of such a mall does not lose all control over its private ownership interest. As the supreme court observed in Corn v. State, 332 So.2d 4, 8 (Fla. 1976):
Here we have a situation of property privately owned but utilized for monetary gain and hence opened to the public, property `quasi-public' in the nature of its use. In a sense an invitation is extended to the public to shop in the Mall to the financial advantage of the owners of the stores contained therein and consequently to the advantage of the Mall owner.... The invitation presupposes that the conduct of persons coming there will be in keeping with such purposes. However, reasonable nondiscriminatory restrictions pertaining to the use of the Mall may be placed on the users of such Mall ...
We find that one such reasonable restriction is that the invited guests will not steal from the host. When such a guest is found to have done so, the implied invitation may be revoked as to that guest. Section 810.08, Florida Statutes (1991), permits the owner to withdraw that consent  even orally  and places no time restrictions on the withdrawn invitation. In our case, the owner has said in effect, "Don't come back so long as I own the mall unless I tell you otherwise." The Orlando Police Department policy cannot take away the owner's statutory right. Even though a six-month period had run, from both the written and oral notice, Woods had no invitation (thus no right) to return to the mall for her Christmas shoplifting. She committed the offense of trespassing (after notice) in the presence of the officer.
We find the stop legal and reverse the suppression order.
REVERSE and REMAND for further proceedings.
W. SHARP, J., concurs.
PETERSON, J., dissents with opinion.
PETERSON, Judge, dissenting.
The majority focuses on the policy of the Orlando Police Department to limit the life of *741 trespass warnings to six months. I agree with the majority that the police have no such authority. Property owners should not be frustrated by this ad hoc policy when they seek to have violators arrested.
The problem in this case is that the owner of the mall adopted this six-month longevity for trespass warnings when it allowed off-duty officers to run its security department and establish that policy as its policy. An owner, not the police, has the right to limit the duration of its trespass warnings. In this case, however, the off-duty police officers employed by the owner as security officers, limited the duration of the trespass warning with the owner's acquiescence; having done so, there was no probable cause for the stop of the defendant. In fact, the defendant was never arrested for trespass and the reason given for the initial stop was to issue an updated trespass warning. While the trial court did not articulate the reason for the suppression in its order, a review of the record indicates that the controversy over the longevity of the trespass warning must have been resolved by the trial court in the defendant's favor. Resolution of that factual controversy was the duty of the trial court. We should not reverse on that issue no matter what the temptation is to punish an allegedly habitual thief.
NOTES
[1] The Orlando Police Department policy of limiting the effectiveness of the written notice to six months apparently is based on the assumption that identifying the person so noticed after that period would be difficult. That is not a concern in this case where the officer has such intimate knowledge of the suspect.
[2] The court in Melton v. State, 546 So.2d 444 (Fla. 1st DCA 1989) implies that a trespass warning may possibly become "stale," causing a stop for trespass to become unreasonable. There may be factual situations  perhaps when the arresting officer did not himself issue the warning or was not personally familiar with the trespasser  in which the passage of time might become important. However, when the arresting officer himself, as an agent of the owner, issued the warning to someone he knows well, the mere passage of time, even eighteen months, seems irrelevant.